1
2
3
4
5
6            IN THE UNITED STATES DISTRICT COURT
7              FOR THE DISTRICT OF ARIZONA
8
9   Ronnie Lee Poe,                    )
                                       )
10              Plaintiff,             )    No. CV 08-402-TUC-JMR-DTF
                                       )
11  vs.                                )    **REPORT AND RECOMMENDATION**
                                       )
12  Michael J. Astrue, Commissioner    )
    of  Social Security,               )
13                                     )
                Defendant.             )
14                                     )
    _____)
15
16
17          Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of
18  a final decision by the Commissioner of Social Security (Commissioner).  This case presents
19  four issues on appeal:  (1) whether the Administrative Law Judge (ALJ) failed to consider
20  Plaintiff's combined impairments; (2) whether the ALJ erred in rejecting the Veteran's
21  Administration findings; (3) whether the ALJ erred in rejecting a treating doctor's opinion; and
22  (4) whether the ALJ erred in rejecting Plaintiff's credibility without sufficient reason.  Based
23  on the pleadings and the administrative record submitted to the Court, the Magistrate Judge
24  recommends the District Court, after its independent review, grant Plaintiff's motion for
25  summary judgment and remand for further proceedings.
26                      **PROCEDURAL HISTORY**
27          Plaintiff filed an application for Social Security disability insurance benefits (DIB) in
28  October 2005.  (Administrative Record (AR) 57).  Plaintiff alleged disability from May 2, 2005,

to present.  (AR 15, 50.)  After Plaintiff's applications were denied, he appealed the denials and appeared and testified before ALJ Norman R. Buls on April 17, 2007.  (AR 43, 48, 1460-76.)  Subsequent to the hearing, the ALJ found Plaintiff was not disabled because he could perform past relevant work.  (AR 15-22.)  The Appeals Council denied Plaintiff's request to review the ALJ's decision.  (AR 4.)

## FACTUAL HISTORY

Plaintiff was born on September 17, 1943, making him 62 years of age at the time he filed his DIB application.  (AR 55.)  Plaintiff served in the military from November 1, 1960 to June 30, 1983, including spending more than two years in Vietnam.  (AR 57, 1469.)  Plaintiff began working as a therapist in 1974, earning a master's degree in the field in 1983.  (AR 149, 160, 1461-62.)  Plaintiff has over four decades of a stable work history beginning in 1959.  (AR 50-51.)  He earned $44,000 in 2004, and earned $33,000 in 2005, prior to his May alleged onset of disability.  (AR 51.)

The entirety of Plaintiff's medical records are from the Southern Arizona Veterans Affairs Health Care System (VA),[1] which document the following relevant conditions up to May 2005:  diabetes mellitus type II, 1999; displacement of intervertebral disc, essential hypertension, hyperlipidemia, and hepatitis B, January 2001; posttraumatic stress disorder (PTSD), January 2001, with depressive symptoms noted, May 2004; gastroesophageal reflux disease, May 2001; and memory loss, May 2005.  (AR 176-81.)  In April 2005, Plaintiff was scheduled for back surgery on June 28, to include an L3-4-5 laminectomy, foraminotamies, and the removal of a synovial cyst compressing the L5 nerve root.  (AR 521-26.)  The surgery was cancelled because, in May 2005, Plaintiff began a series of stays in the hospital from which he was not fully discharged until September 2005:

[C]laimant was hospitalized at Northwest Hospital and treated for presumed

---

[1]  There are several references in the records that VA staff would not complete Social Security Administration assessments or write letters as requested by Plaintiff and his attorney.  (AR 1225, 1230, 1258, 1359, 1425.)

bacterial, community-acquired pneumonia (pgs. 1F/342). Veterans Administration Medical Center (VAMC) records show he was admitted on June 17, 2005 through June 20, 2005, with pneumonia which was ultimately diagnosed as coccidiomycosis. Claimant returned on July 12, 2005[,] with abdominal pain, fever, nausea, diarrhea and weakness. He was admitted and found to have Clostridium difficile colitis. His hospital course was complicated by recurrent Clostridium difficile colitis, diabetes mellitus, tachycardia, left arm phlebitis, anemia and deconditioning.

(AR 16.) In a July 25, 2005 Progress Note, the nurse practitioner recorded that Plaintiff's wife reported his memory had changed while in the hospital and he had an increase in anxiety and depression. (AR 912.) The September 12, 2005 hospital discharge summary provided Plaintiff could return to work in October 2005. (AR 412, 1191.) With respect to deconditioning, at discharge, Plaintiff was able to walk more than one hundred yards and perform daily living activities. (AR 411.)

Plaintiff has been a patient of his primary care physician at the VA, Dr. Cynthia Johnston, since at least 1999. (AR 151, 1469.) At a September 22, 2005 follow-up appointment with Dr. Johnston, Plaintiff was reported as doing well with a stable mood and report of no depression, but only able to do an activity for an hour at a time. (AR 533.) Dr. Johnston noted that full recovery and return to work could take up to six months. (AR 534.)

Dr. Johnston completed a Long Term Disability Claim Form on October 25, 2005, in which she listed as her primary diagnoses for Plaintiff, colitis, coccidiomycosis, PTSD, and diabetes mellitus. (AR 1353.) Dr. Johnston limited Plaintiff to carrying no more than twenty-five pounds and noted that he needed to rest throughout the day. (AR 1354.) At that time, Dr. Johnston expected Plaintiff to make a full recovery with a return to work in five to six months. (*Id.*) Five months later, however, at an April 4, 2006 follow-up appointment, Dr. Johnston noted "marked fatigue" (AR 1213), and "[o]verall, I have advised this patient that he is not physically able to continue to work and recommend he consider retirement/disability at this point." (AR 1215.) She further concluded that "Depression/ptsd, remains a significant problem for this patient and likely contributing to his memory problems." (AR 1215.) She noted, "[h]earing remains poor, and now significant problems with his short term memory." (AR

1213.)  In September 2006, Plaintiff was referred for an MRI, due to back pain, and scheduled for a surgical consult in March 2007 (AR 1373, 1421); at the consult, Plaintiff was referred for surgery as soon as possible (AR 1374).

Plaintiff has been a patient of his treating psychiatrist at the VA, Dr. Christopher Petro, for more than five years.  (AR 153, 1469.)  Plaintiff saw Dr. Petro approximately every three months for a twenty to thirty minute psychiatric follow-up and medication management appointment; he had other periodic mental health appointments at the VA as well.  (AR 1231, 1247, 1257, 1260, 1377, 1405, 1441.)  From July 2004 to May 2005, the mental health specialists at the VA assigned Plaintiff a Global Assessment of Functioning (GAF) score of 56.  (AR 1187.)  In late 2005, Plaintiff reported that his PTSD had worsened due to his hospital stay, he was depressed and not sleeping well (AR 1264, 1258); in early December 2005, clinical nurse specialist Mary Sabey assigned Plaintiff a GAF score of 45 (AR 1259).  From January 2006 through March 2007, Dr. Petro assigned Plaintiff a GAF rating of 50.  (AR 1249, 1379, 1406, 1443.)  During this time, Plaintiff's symptoms included poor sleep with waking in the night and nightmares, non-severe depression, visual and auditory hallucinations, and memory problems and forgetfulness, all of which varied in severity and frequency.  (AR 1231-33, 1247, 1377-78, 1405, 1442.)  Dr. Petro noted that increased back pain triggered Plaintiff's PTSD symptoms.  (AR 1377.)

The Social Security Administration hired two sets of doctors, one set to assess Plaintiff's physical limitations and one set to assess Plaintiff's mental limitations; each set had one examining physician and two reviewing (non-examining) physicians.[2]  With respect to Plaintiff's physical limitations, Dr. Enrique Suarez conducted an examination of Plaintiff while Drs. John Fahlberg and Fernando Gonzales-Portillo completed assessments based solely on record review.  With respect to Plaintiff's mental limitations, Dr. Eugene Campbell conducted

---

[2] Nothing in the records suggest that any of these doctors have particular knowledge or experience with PTSD, while Plaintiff's long-time treating physicians are employed by the VA, which specializes in treating veterans.

an examination of Plaintiff, and Drs. Ronald Nathan and Alan Goldberg reviewed Plaintiff's records.

Dr. Suarez examined Plaintiff on February 3, 2006, finding Plaintiff could walk without limitations and had no conditions that would limit him for twelve continuous months. (AR 1336, 1339.) Dr. Suarez noted that Plaintiff's hearing appeared normal with his aids, colitis problems, valley fever and coccidioidomycosis pneumonia were resolved, diabetes mellitus was controlled with medication, PTSD appeared to be responding to medication, and back pain was not severe. (AR 1333-35.)

On March 1, 2006, reviewing physician Dr. Fahlberg completed a Residual Functional Capacity Assessment (RFCA), in which he stated Plaintiff's primary diagnosis to be hearing loss, with secondary diagnoses of coccidiomycosis, pseudomembranous colitis, and degenerative disc disease. (AR 1325.) On May 22, 2006, the second reviewing doctor, Dr. Gonzales-Portillo, completed an RFCA, in which he stated Petitioner's primary diagnoses to be hepatitis B, valley fever, diabetes mellitus, fatigue, and back problems. (AR 1289-96.) Drs. Fahlberg and Gonzales-Portillo found that Plaintiff could stand and/or walk for six hours of a work day, and could sit for six hours of a work day. (AR 1290, 1326.) Dr. Gonzales-Portillo found that Plaintiff could only occasionally balance or crawl, and should avoid concentrated exposure to extreme cold or environmental hazards (AR 1291, 1293), while Dr. Fahlberg found no postural limitations but that Plaintiff should avoid concentrated exposure to noise and hazards (AR 1329). Drs. Fahlberg and Gonzales-Portillo found no communicative limitations. (AR 1293, 1329.)

Dr. Campbell, a psychologist, conducted a disability evaluation of Plaintiff on January 26, 2006, in which he concluded that Plaintiff had major depressive disorder, recurrent, moderate; he noted Plaintiff was receiving treatment and indicated the prognosis was good. (AR 1340-44.) Testing indicated Plaintiff had no cognitive impairment and good memory skills (AR 1344); Dr. Campbell opined that depression was the likely cause of cognitive or concentration problems in Plaintiff's daily life; that he felt overwhelmed and had trouble making decisions; and that Plaintiff did not handle stress adequately. (*Id.*) Dr. Campbell found

Plaintiff was "moderately limited (fair/limited but not precluded)" with respect to the "ability to maintain attention and concentration for extended periods." (AR 1347.) He found Plaintiff was "not significantly limited (good/mild limitations) or had no limitations with respect to all other categories. (AR 1346-51.)

Dr. Nathan completed a Psychiatric Review Technique Form (PRTF) on March 1, 2006, in which he found Plaintiff had non-severe impairments. (AR 1311.) Specifically, he found Plaintiff had major depressive disorder in partial remission and PTSD in remission. (AR 1311, 1314, 1316.) On May 6, 2006, Dr. Goldberg also completed a PRTF, in which he found that Plaintiff had non-severe impairments. (AR 1297.) Specifically, he found that Plaintiff had major depressive disorder in partial remission and an anxiety disorder evidenced by recurrent and intrusive recollections of a traumatic experience. (AR 1297, 1300, 1302.) Drs. Nathan and Goldberg indicated that Plaintiff had mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. (AR 1307.)

On October 26, 2006, the Department of Veterans Affairs issued a Rating Decision, in which it found Plaintiff ten percent disabled as of December 1, 2005, and seventy percent disabled as of May 31, 2006, based on PTSD. (AR 62.) This decision relied on Plaintiff's submissions, Plaintiff's VA records, and an August 17, 2006 examination conducted at the VA. (AR 62-63.)

At the time of the April 17, 2007 hearing before the ALJ, Plaintiff testified that chronic fatigue was the primary reason he could not work, and he often had to nap during the day. (AR 1465, 1467, 1475.) He reported taking pain medication for his back, which contributed to his tiredness. (AR 1471.) He stated that he could comfortably walk about 100 feet, he could ride approximately twenty minutes on his bike, and he could sit for thirty minutes to one hour. (AR 1472-74.)

On June 10, 2007, the ALJ found Plaintiff had the following severe impairments: diabetes mellitus without sequelae; hypertension; history of valley fever and coccidiomycosis, resolved; history of Clostridium difficile colitis, resolved; bilateral, high frequency, sensorineural hearing loss, treated with bilateral hearing aids with good result; degenerative

arthritis of the right hip; and L5-S1 degenerative facet arthropathy and spinal stenosis. (AR 21.) The ALJ further found that Plaintiff's mental/emotional impairments were not severe and did not result in any significant functional limitations. (*Id.*) At step four, the ALJ found that Plaintiff had the residual functional capacity to perform medium-level work activity with mild psychiatric restrictions, as well as a need to avoid significant exposure to cold and hazards and to only occasionally crawl or balance; the ALJ concluded Plaintiff could perform his past work as a therapist. (*Id.*)

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate DIB claims. 20 C.F.R. § 404.1520; *see also Heckler v. Campbell,* 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's residual functional capacity (RFC) precludes him from performing his past work. 20 C.F.R. § 404.1520(a)(4). At step five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §414.1520(a)(4).

In this case, Plaintiff was denied at step four of the evaluation process. Step four requires a determination of whether the claimant has sufficient RFC to perform past work. 20 C.F.R. §§ 404.1520(e). Residual functional capacity is defined as that which an individual can still do despite his limitations. 20 C.F.R. § 404.1545. If the ALJ concludes the claimant has RFC to perform past work, the claim is denied. 20 C.F.R. § 404.1520(f). An RFC finding is based on the record as a whole, including all physical and mental limitations, whether severe or not, and all symptoms. Social Security Ruling (SSR) 96-8p.

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the

Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney,* 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## **ANALYSIS**

### **Consideration of Impairments in Combination**

Plaintiff argues the ALJ failed to consider his impairments as coexisting "with waxing and waning of the severity of each impairment at any particular moment in time." (Dkt. 16-2 at 6.) Additionally, Plaintiff argues the ALJ treats his back and hip pain as only intermittent and ignores his depressive symptoms.

To the extent Plaintiff is arguing that the ALJ failed to consider his impairments in combination, there is no support for his argument. Rather, the ALJ traced chronologically the variety of impairments alleged by Plaintiff, discussing the existence and severity of each over time. Further, in his findings the ALJ listed all Plaintiff's impairments that he found to be severe, regardless of the time frame in which they occurred, and assessed them individually and in combination for purposes of step 3 of the analysis. (AR 21, ¶ 3.)

To the extent Plaintiff is arguing that the ALJ erred in assessing his hip and back pain, the Court disagrees. The ALJ concluded Plaintiff had degenerative arthritis in his right hip. (AR 16, 21.) The ALJ noted that, in March 2006, Plaintiff complained of hip pain and that there were "moderate degenerative changes." (AR 17.) In later discussion, the ALJ stated that there are isolated references in the record to right hip pain, "but the clinical record is notably lacking in documentation of ongoing treatment for [this] condition[], and there are no documented limitations of the requisite duration." (AR 18.) Petitioner does not point to any contrary evidence in the record. The Court's review of the record in entirety reveals that the ALJ accurately summarized the evidence regarding Petitioner's hip problems and the judge's findings with respect to Petitioner's hip pain are supported by substantial evidence.

With respect to Plaintiff's back problems, the ALJ concluded that he had L5-S1 degenerative facet arthropathy and spinal stenosis. (AR 16, 21.) In discussion, the ALJ stated that in March 2005, Plaintiff received the above diagnosis and surgery was recommended. (*Id.* at 16.) The ALJ ultimately concluded that Plaintiff's "back complaints are intermittent in nature and not present for the requisite duration of 12 continuous months or more":

> In July 2005, claimant had no range of motion deficits (Exhibit 1F/309). In March 2006, he denied back pain or back problems, and further evaluation was deferred (Exhibit 2F/61). Claimant was not evaluated for complaints of back pain again until February 2007. MRI scanning revealed no worsening from a previous study obtained in February 2005 (Exhibit 4F/1-2). Motor strength remains 5/5 in lower extremities. Straight leg raise testing is negative (Exhibit 4F/8). Clinical records document normal ambulation and observation that claimant sits comfortably in a chair (Exhibits 2F/70, 3F/48, 53). Claimant in November 2005 reported he was able to walk "+2 miles" before he needed to stop and rest (Exhibit 1E/70). In January 2007, claimant reported riding a bicycle 10 miles, three to four times weekly (Exhibit 4F/30). Moreover, he is frequently described as appearing in no acute distress (i.e., Exhibits 2F/62, 52, 3F/46, 32, 24).

(*Id.* at 18-19.)

The ALJ's factual summary is not entirely accurate because Plaintiff complained of back pain in September and October 2006. (AR 1420, 1412-13.) An MRI was scheduled and conducted in November 2006, and a surgical consult was scheduled at that time. (AR 1367-68, 1373.) At the subsequent March 2007 consult, although Plaintiff's motor strength was 5/5 and his straight leg test was negative, he was only able to walk approximately 400 meters and he

was recommended for surgery as soon as possible.  (AR 1374.)

Despite these discrepancies, the ALJ's ultimate conclusion that Plaintiff's back problems were intermittent and not present for a continuous twelve months is supported by substantial evidence.  In February 2006, when he was examined by Dr. Enrique Suarez, Plaintiff reported that his back pain was not severe and the doctor found he could walk without limitations.  (AR 1334-36.)  As of March 2006, Plaintiff indicated to his treating doctor that his back was not a substantial problem.  (AR 1227.)  When Drs. Fahlberg and Gonzales-Portillo reviewed Plaintiff's records in March and May of 2006, respectively, they found that he could stand and/or walk for six hours of a work day, and could sit for six hours of a work day.  (AR 1290, 1326.)  Plaintiff did not indicate a significant change until late September 2006.  Further, although Plaintiff's back problems were assessed as intermittent, the ALJ found Plaintiff's back issues to be a severe impairment at step two of the disability analysis and limitations related to his back were considered with respect to Plaintiff's RFC.

With respect to depression, in reliance on Dr. Petro's opinion, the ALJ found that Plaintiff's major depressive disorder was consistently in remission since January 2006.  (AR 19.)  Plaintiff does not challenge that finding and it is supported by substantial evidence.  (AR 1248, 1377, 1406, 1443.)  To the extent Plaintiff asserts depression as a symptom, rather than an independent medically determinable impairment, it is addressed in the following sections.

The ALJ did not err in failing to consider Plaintiff's impairments in combination.

**The VA Ratings Decision**

In October 2006, the Department of Veterans Affairs issued a Ratings Decision in which it found him ten percent disabled as of December 1, 2005, and seventy percent disabled as of May 31, 2006, based on PTSD.  (AR 62.)  The ten percent evaluation was based on Plaintiff's nightmares and hyperarousal.  (AR 63.)  The seventy percent finding was based on occupational and social impairment:

> This impairment is based on PTSD symptoms of periodic hallucinations, obsessive behavior involving the counting of tile on ceilings and floors which was done even at the VA examination, continuous depression, panic attacks, sleep impairment, intrusive thoughts, irritability, verbal confrontations with former co-workers and members of your family, social isolation and lack of energy and

fatigue. You have problems with short term memory loss and are unable to complete tasks because you cannot remember what you set out to do. You have ongoing vigilance and startle response. The severity of symptoms is moderate to high and the duration continues. You receive treatment from a psychiatrist every 2 months. The examiner diagnosed post traumatic stress disorder (PTSD) and assigned a Global Assessment of Functioning (GAF) of 50.

(*Id.*) The Ratings Decision was based on a May 31, 2006 Statement in Support of Claim; a August 3, 2006 Veteran's Claim Assistance Act letter; VA treatment records from January 2006 to June 2006; an August 17, 2006 examination at the VA; and review of the VA claim file. (AR 62-63.)

Plaintiff argues the ALJ applied the wrong legal standard and failed to give proper weight to the Ratings Decision. As cited by the ALJ, 06-03p required him to consider the Ratings Decision but he was not bound by it. (AR 19.) Governing circuit law, however, required the ALJ to "give great weight to a VA determination of disability," unless "he gives persuasive, specific, valid reasons . . . supported by the record," for giving it less weight. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (granting benefits because the ALJ failed to consider an eighty percent VA disability rating based on depression, an impairment which the ALJ found to be non-severe at step two); *see also* SSR 06-03p (requiring the ALJ to explain the consideration given to another agency's decision). Defendant argues the ALJ did not give weight to the Ratings Decision because it was not binding and it was based on different criteria than that set forth in the Social Security Act. (Dkt. 24 at 3.) This argument is contrary to *McCartey*, which requires that an ALJ's decision to give less than great weight to a VA Rating Decision must be based on the <u>record</u>. 298 F.3d at 1076 (noting the "marked similarity" between the social security and veteran's disability programs).

The VA Rating Decision stated that Plaintiff's symptoms were of moderate to high severity and he had a seventy percent occupational and social impairment. The ALJ gave no weight to the Rating Decision because he found that Plaintiff's PTSD did not qualify as a severe impairment at step two of the analysis and that it did not impose any significant limitations. The finding of a severe impairment at step two is a *de minimis* standard and an impairment can be found not severe "*only if* the evidence establishes a slight abnormality that has no more than a

minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).  The Ratings Decision and the ALJ finding are in direct contradiction regarding the severity and resulting limitations arising from Plaintiff's PTSD.  Thus, the ALJ was required to provide specific, record-based persuasive reasons for not giving it great weight.  *See Kanelakos v. Astrue*, 249 Fed. Appx. 6, *8 (10th Cir. 2007) (finding ALJ erred in concluding mental impairments not severe at step two without discussing significance of VA seventy percent disability rating based on PTSD with depression) (citing *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005)).

After citing the relevant SSR, the ALJ did not articulate specific reasons for not giving the VA Ratings Decision weight.  (AR 19.)  The ALJ did not recite the basis for the Ratings Decision or note the fact that Plaintiff had been rated seventy percent disabled.  (AR 17, 19.)  The ALJ, however, did discuss Plaintiff's PTSD diagnosis, noting some but not all of the record evidence.  The ALJ recounted that Plaintiff's treating psychiatrist, Dr. Petro, found his PTSD symptoms improved as of January 2006, December 2006, and March 2007.  (AR 19.)  The ALJ noted generally that Dr. Petro found Plaintiff's mental status normal, he was calm, he was not having delusions, psychotic symptoms or obsessions, his attention, concentration, memory, insight and judgment were normal, and he scored 100% on a Mini-Mental Status Exam.  (*Id.*) Further, the ALJ stated that Plaintiff only had hallucinations at night and an "occasional" nightmare.  (*Id.*)  Finally, the ALJ concluded that Plaintiff's psychiatric symptoms were controllable with medication.  (*Id.*)  The ALJ ultimately concluded that Plaintiff's PTSD did not meet the *de minimis* standard at step two to qualify as a severe impairment and did not result in significant functional limitations.  (*Id.* at 21.)

The ALJ's assessment that Plaintiff's PTSD symptoms were "improved" and controlled with medication did not accurately represent the entirety of the record regarding Plaintiff's PTSD.  *See Gude v. Sullivan*, 956 F.2d 791, 793-94 (8th Cir. 1992) (noting that being "stabilized" or "doing well" with respect to certain ailments does not mean absence of significant symptoms).  In November and December 2005, Plaintiff reported that his PTSD had worsened due to his hospital stay, he was depressed and not sleeping well.  (AR 1258, 1264.)

Although Dr. Petro found Plaintiff improved in January 2006, he had not reached the optimal results from his medication, and Plaintiff reported frequent nightmares and mild depression. (AR 1247.) In February 2006, Plaintiff continued poor sleep with nightmares, as well as some visual and auditory hallucinations; he was experiencing non-severe depression and memory problems, was frequently disoriented, and would forget the purpose of what he was doing. (AR 1231-33.) A clinical nurse at the VA referred Plaintiff to a benefits advisor because Plaintiff's PTSD symptoms was "caus[ing] significant impairment in his life." (AR 1233.) Similarly, in June 2006, Plaintiff continued to have "frequent" nightmares and visual hallucinations, with daytime tiredness. (AR 1442.) The ALJ's reference to Plaintiff having only "occasional nightmares" comes only from his December 2006 appointment. (AR 1405.) At that time, he continued to have visual hallucinations although they had decreased. (*Id.*) In January 2007, his primary care doctor reported that PTSD remained a significant problem. (AR 1398.) Contrary to the ALJ's reporting, in March 2007, Plaintiff's PTSD symptoms had worsened and his depression had increased. (AR 1377-78.) Plaintiff reported more frequent flashbacks and waking three to four times per night, sometimes yelling, and with nightmares two to three times weekly. (*Id.*) Dr. Petro reported Plaintiff's mood to be mildly depressed at that time. (AR 1378.)

Consistent with the VA Ratings Decision, Plaintiff's medical records consistently document that he experienced significant fatigue during daytime hours. (AR 1231, 1258, 1442.) The ALJ noted that, in September 2006, Plaintiff reported sleeping better when he stopped taking antidepressants (AR 17); however, the ALJ did not mention that, in December 2006, Plaintiff resumed taking the antidepressants because he had become extremely irritable without them (AR 1405). Similarly, Plaintiff's medical records consistently document memory problems. (AR 176-77, 912, 1213, 1232-33, 1235, 1256.) Additionally, although Plaintiff was consistently on medication for his PTSD, which was said to "improve" his symptoms (AR 1248, 1406, 1443), the records detail continued symptoms in varying degrees of severity.

In sum, the VA Rating Decision is consistent with Plaintiff's treating psychiatrist and his VA medical records as a whole, which diagnose him with chronic PTSD and document the

following resultant symptoms: depression, sleep impairment, intrusive thoughts, irritability, social isolation, fatigue, memory problems, and startle response. (AR 63, 176-77, 178, 1231-33, 1247-48, 1258, 1264, 1377-78, 1405, 1442.) Further, through the entirety of 2006, and up to March 2007, Plaintiff's treating psychiatrist gave him a GAF rating of 50 (AR 1249, 1443, 1406, 1379); this is identical to the score assigned to Plaintiff in the examination conducted for the Ratings Decision. The GAF is a 100-point scale that measures a person's overall level of psychological, social and occupational functioning on a hypothetical continuum. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* ("*DSM IV*"), at 32, 34 (4th ed. 2000). Lower numbers indicate more severe symptoms. A rating of 41 to 50 indicates serious symptoms or "serious impairment in social, occupational, or school functioning." *Id.* at 34; *see also Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003) (noting that a GAF of 50 reflects serious limitations and the vocational expert believed it precluded finding work).

The ALJ relied on January 2006 testing by consulting psychological examiner, Dr. Campbell, who found that Plaintiff had no cognitive impairment and good memory skills. (AR 17, 19.) Despite the testing, Dr. Campbell found Plaintiff's complaints of cognitive problems credible and attributable to depression. In November and December 2005, and January and February 2006, VA records document Plaintiff's depression, although Dr. Petro found that his depressive disorder, as an independent diagnosis, was in remission. (AR 1247-48, 1258, 1264.) Dr. Campbell provides little insight into Plaintiff's PTSD because he made no mention of it in his entire report and did not diagnose it. (AR 1340-51.)

The ALJ accorded particular weight to non-examining doctors, Nathan and Goldberg, who found Plaintiff's psychiatric impairments to be not severe and any limitations to be mild. (AR 20, 1297, 1307, 1311, 1321.) This is in direct contradiction to Plaintiff's fifteen-month GAF assessment of 50 by treating physician, Dr. Petro, and the examining physician for the VA assessment. Further, Dr. Nathan found Plaintiff's PTSD to be in remission, which is contradicted by the records. Both Drs. Goldberg and Nathan found Plaintiff independent with activities of daily living. (AR 1309, 1323.) This is countered by record evidence, discussed thoroughly below with respect to the ALJ's credibility analysis.

The ALJ erred by failing to provide specific, valid, record-based reasons to not give the VA Ratings Decision great weight. Further, the record is substantially consistent with the VA Ratings Decision.

### **Treating Physicians' Opinions**

Plaintiff argues the ALJ erroneously rejected the opinions of his treating psychiatrist, Dr. Petro, and his treating primary care physician, Dr. Johnston.

If a treating doctor's opinion is not contradicted, the ALJ must provide "clear and convincing" reasons to reject it. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). If a treating doctor's opinion is contradicted by another physician, the ALJ may reject it, if he provides "'specific and legitimate reasons' supported by substantial evidence." *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

The governing regulations provide significant guidance regarding the factors the ALJ should consider when evaluating medical opinions; in this case, the ALJ failed to do so. Specifically, if a treating physician's opinion is well-supported and not inconsistent with substantial evidence in the record, then the ALJ should give it controlling weight. 20 C.F.R. § 404.1527(d)(2). If the treating doctor's opinion is not given controlling weight then, in assessing the weight it will be given, the ALJ considers the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician, and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. § 404.1527(d)(2)(I)-(ii). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs" and their evidentiary requirements', and the degree of his or her familiarity with other information in the record. 20 C.F.R. § 404.1527(d)(3)-(6).

First, Plaintiff argues the ALJ rendered his decision based on isolated parts of the record

because the opinion of Dr. Petro supports a finding of disability. In particular, Plaintiff notes that the examiner who evaluated Plaintiff for his VA disability rating produced a report consistent with Dr. Petro's assessments, and both of them assigned Plaintiff a GAF score of 50.[3]

As discussed thoroughly above, Dr. Petro diagnosed Plaintiff with chronic PTSD with depressive symptoms prior to his 2005 hospitalization, and the symptoms were found to be exacerbated by his time in the hospital. (AR 1258.) For all of 2006 and up through March 2007, Dr. Petro reported that Plaintiff's GAF score was a 50, indicating serious symptoms and/or impairments. Throughout this time period, Plaintiff received regular treatment and medication review for his PTSD. (AR 1231-34, 1247-49, 1257-59, 1377-80, 1405-07, 1441-44.) The symptoms varied in severity at any given time but the diagnosis and GAF never changed. The ALJ rejected Dr. Petro's opinion, finding that Plaintiff's PTSD did not impose significant limitations and was not severe at step 2, which means it was found to be only a slight abnormality with minimal effect on claimant's ability to work, *Webb*, 433 F.3d at 686-87.

The ALJ erred by failing to provide, at a minimum, specific, legitimate reasons supported by substantial evidence for rejecting Dr. Petro's opinion. The ALJ gave "particular weight" to the assessments of the non-examining physicians, Drs. Gonzales-Portillo, Goldberg, Nathan and Fahlberg, finding that they were "well supported" and "not inconsistent with other substantial evidence in the case record." (AR 20.) However, a nonexamining physician's opinion is, without more, not substantial evidence to reject the opinion of a treating physician. *Lester*, 81 F.3d at 831 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)).

The ALJ erred in rejecting Dr. Petro's opinion without explanation. On remand, the Commissioner should reconsider Dr. Petro's opinion and the VA records as a whole. If additional information from Dr. Petro is needed to assess his opinion of Plaintiff's limitations or if the August 2006 VA examiner's full report would illuminate the VA Ratings Decision, the

---

[3] The VA Ratings Decision is in the record, and reports a diagnosis of PTSD and a GAF score of 50 (AR 63); however, the supporting evaluation is not part of the administrative record before the Court.

Commissioner should obtain such evidence. *See* 20 C.F.R. §§ 404.1512(e), 404.1519-1519(h), 404.1527(c)(3).

Second, Plaintiff disputes the ALJ's treatment of Dr. Johnston's opinion. Plaintiff accurately reports that Dr. Johnston indicated, in October 2005,[4] that Plaintiff was severely fatigued but she was hopeful he could return to work in five to six months. (AR 1353-54.) Plaintiff argues the ALJ erroneously interpreted this same evidence as releasing Plaintiff to work as of October with the capacity to lift up to twenty-five pounds. (Dkt. 16-2 at 11-12; Dkt. 27 at 5.) This argument is baseless because the ALJ did not make that factual finding. (AR 15-22.) The ALJ accurately reported that, in October 2005, Dr. Johnston limited Plaintiff to lifting/carrying twenty-five pounds and expected him to be fully recovered in five to six months; although the ALJ did not mention Dr. Johnston's limitation that Plaintiff needed to rest throughout the day, his finding was a generally accurate representation of the record. (AR 19.) Further, the ALJ neither rejected nor particularly relied upon that limited record evidence from Dr. Johnston.

Plaintiff is correct, however, that Dr. Johnston never assessed Plaintiff as able to return to work. Rather, Dr. Johnston found Plaintiff unable to return to work in December 2005, due to hypertension, PTSD, memory problems and hearing loss, and again, in April 2006, due to fatigue, memory problems and depression/PTSD. (AR 1213-15, 1254-56.) The ALJ mentioned Dr. Johnston's April report and finding but stated that the ultimate decision regarding disability was reserved to the ALJ. (AR 19.)

The ALJ erred in not considering Dr. Johnston's opinion on Plaintiff's ability to return to work. *See* SSR 96-5p (providing that ALJ must consider all medical opinions, even on issues reserved to the Commissioner, although treating doctor's opinions are not entitled to controlling weight on ultimate issues). Further, the ALJ's finding that Plaintiff could return to his prior work as a therapist is a rejection of Dr. Johnston's opinion to the contrary. The ALJ erred in

---

[4] Plaintiff indicates this finding by Dr. Johnston was made in September 2005, but the record cited was dated October 25, 2005. (AR 1354.)

rejecting Dr. Johnston's opinion without providing any reason for doing so. As with all medical opinions, the ALJ was required to consider the factors set forth in 20 C.F.R. § 404.1527(d) as to Dr. Johnston's opinion, *see* SSR 96-5p, and to provide reasons for rejecting the opinion, *see Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001) (requiring clear and convincing reasons for rejecting uncontroverted opinions on ultimate issues, and specific and legitimate reasons for rejecting such opinions that are contradicted) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Further, if a treating source offers an opinion on the ultimate issue of disability and the basis for that opinion is not evident, the ALJ must "make every reasonable effort to recontact such sources for clarification." SSR 96-5p.

The ALJ erred in failing to consider Dr. Johnston's opinion on Plaintiff's ability to return to work and in rejecting her opinion without providing sufficiently supported reasons. Upon remand, the ALJ should consider Dr. Johnston's opinion and seek clarification from her if necessary.

### **Plaintiff's Credibility**

Plaintiff challenges the ALJ's credibility finding: "[a]lthough the claimant has a history of impairments that could possibly cause the symptoms that he has alleged, these were not found by the undersigned to be credible to the degree alleged." (AR 20.) Plaintiff specifically challenges the ALJ's findings regarding his back pain, his symptoms associated with PTSD such as depression, hallucinations, memory problems, and fatigue, and the ALJ's corresponding finding that Plaintiff's activities of daily living are inconsistent with disability.[5]

In general, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the ALJ. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an ALJ may certainly find testimony not credible and disregard it . . . [the court] cannot affirm such a

---

[5]   Defendant argues that the ALJ discounted Plaintiff's credibility because certain conditions alleged by Plaintiff as disabling were resolved without residual effect. (Dkt. 24 at 7.) The ALJ's decision does not link Plaintiff's resolved medical conditions with his credibility finding; further, the ALJ found these conditions to be severe during the relevant time frame. (AR 15-22.)

determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v. Sullivan,* 947 F.2d 341, 345-346 (9th Cir. 1995) (requiring specificity to ensure a reviewing court the ALJ did not arbitrarily reject a claimant's subjective testimony); SSR 96-7p. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell,* 947 F.2d at 344). The ALJ found Plaintiff had satisfied part one of the test by proving impairments that could produce the symptoms alleged. Second, if "there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1281, 1283-84). The ALJ did not make a finding that Plaintiff was malingering; therefore, to support his rejection of Plaintiff's assertions regarding the severity of his symptoms, the ALJ had to provide clear and convincing, specific reasons. *See Vasquez v. Astrue*, 547 F.3d 1101, 1105 (9th Cir. 2008) (quoting *Lingenfelter*, 504 F.3d at 1036).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan v. Comm'n of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). When assessing a claimant's symptoms, the ALJ should consider, in addition to objective medical evidence, his daily activities; the location, intensity, frequency and duration of the symptom; factors that trigger or exacerbate the symptom; the effectiveness of any medication to alleviate the symptom and any side effects; treatment the claimant receives for relief of the symptom; any steps other than treatment used to relieve the symptom (such as lying down or changing position); and any other factors relevant to claimant's limitations due to the symptom. 20 C.F.R. §404.1529(c)(3); SSR 96-7p. In assessing credibility the ALJ can also consider the claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony

from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing *Smolen*, 80 F.3d at 1284). The ALJ's credibility finding is entirely deficient of the requisite specificity; he did not clearly articulate what symptoms he evaluated and found not entirely credible nor which evidence he relied on to discount specific symptoms. *See* SSR 96-7p ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.")

As an initial matter, Plaintiff has a solid forty-five-year work record, which bolsters his credibility regarding his inability to work. *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) (finding claimant with a thirty-two-year employment history "entitled to substantial credibility"); *see Light*, 119 F.3d at 792 (claimant's work record relevant to credibility assessment). Plaintiff served in the military for twenty-three years (AR 57), has a master's degree in counseling and worked as a therapist since 1974 (AR 149, 160, 1461-62).

Plaintiff alleged he has memory problems, difficulty concentrating, depression, and fatigue. The ALJ countered Plaintiff's assertions of depression and memory problems with Dr. Petro's notation that Plaintiff's depression was in remission and testing indicated normal memory and no cognitive impairments. (AR 20.) The ALJ cannot reject Plaintiff's credibility regarding his symptoms solely because they are not substantiated by the medical evidence.[6] *Light*, 119 F.3d at 792; SSR 96-7. Further, there is medical evidence supporting Plaintiff's symptoms. Although Dr. Petro found Plaintiff's major depressive disorder to be in remission,

---

[6] The ALJ's relied on the psychological testing and depression in remission to discount Plaintiff's wife's credibility not Plaintiff. Upon remand, the ALJ should consider Plaintiff's wife's and mother-in-law's functional reports, which bolster Plaintiff's claims that he has a poor memory, and difficulty with concentration and following instructions (AR 131, 139, 115, 123). *See Stout v. Comm'n of Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) (failure to discuss lay testimony in favor of claimant is not harmless unless no reasonable ALJ, fully crediting the lay evidence, could have reached a different disability conclusion).

his records indicate that Plaintiff's PTSD was accompanied by depressive symptoms and Plaintiff had varying levels of depression over time even though it may not have risen to the level of a diagnosable disorder. (AR 178, 1232, 1247, 1264, 1378.) Plaintiff was prescribed and taking medication for PTSD/depression throughout his hospital stay (AR 411, 414, 419, 425) and through the time of his hearing before the ALJ (AR 1233, 1249, 1258, 1379, 1407, 1443). Similarly, although Dr. Campbell's psychological testing revealed no cognitive impairments, Dr. Campbell credited Plaintiff's complaints of memory and concentration impairments and believed them to be due to depression. (AR 1344.) Plaintiff's primary care physician attributed his memory loss to PTSD and his extended hospital stay. (AR 1235.) Additionally, these symptoms are reasonably attributed to PTSD, which includes symptoms of "markedly diminished interest or participation in significant activities," "feeling of detachment or estrangement from others," and "restricted range of affect," as well as "difficulty falling or staying asleep," "irritability or outbursts of anger," and "difficulty concentrating." *DSM IV* at 428. To the extent the ALJ found Plaintiff's PTSD improved over time and controlled with medication, that is not substantiated by the record and it does not meaningfully discount his symptoms – Dr. Petro diagnosed Plaintiff with chronic PTSD and a consistent GAF of 50, indicating serious symptoms and/or impairment, and Plaintiff receives regular treatment for his PTSD, including appointments with his psychiatrist and ongoing medication review. Additionally, one criteria for PTSD is that it causes "clinically significant distress or impairment in social, occupational, or other important areas of functioning." *DSM IV* at 429.

With respect to fatigue, Plaintiff's reports, and those of his wife and mother-in-law, reflect that in November 2005 and May 2006, Plaintiff slept poorly, woke often during the night, and would rest during the day (AR 67, 74-75, 111, 119, 127, 135). *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) (requiring reasons specific to each witness for ALJ to discount lay testimony). Similarly, in an April 2006 self-report for his social security appeal, Plaintiff indicated he had continued fatigue and had to rest twice daily. (AR 102.) At the April 2007 hearing, Plaintiff also reported napping often during the day and that his pain medication for his back caused tiredness. (AR 1465, 1467, 1475, 1470-71.) As discussed above with

respect to the VA Ratings Decision, Plaintiff's medical records confirm reported tiredness and sleep impairment. Although Plaintiff identified fatigue as his primary disabling limitation at the hearing (AR 1475), the ALJ wholly failed to address it.

The ALJ also found, generally and not specific to individual symptoms, that Plaintiff's daily activities were "inconsistent with a disabling level of limitation." (AR 19.) Specifically, that Plaintiff:

> is independent in his activities of daily living, drives a vehicle, attends appointments, cleans up around the house, is able to prepare simple food, plays video games on the computer, walks and rides a bicycle, reads, watches television, is able to help his son with homework or household work, shops for clothes, groceries and at Home Depot, regularly goes to the movies and out to eat, does necessary maintenance around the house, works in the yard for several hours at a time, visits with family, and travels.

(AR 19-20.)

Plaintiff argues the ALJ did not accurately represent the change in Plaintiff's daily activity level over time. The Court agrees. There is no dispute and the record reflects the ALJ's findings that Plaintiff regularly attended appointments, played on the computer, read, watched television, and went out to eat and to the movies. However, the other activities reported by the ALJ are either looked at in isolation or diminished over time.

Plaintiff reported some level of independence in his daily living activities in November 2005, including preparing simple food daily, doing some shopping, and some level of cleaning and yard work. (AR 126, 128, 130, 136, 137.) The ALJ also cited Dr. Campbell's January 26, 2006 report that Plaintiff did house cleaning and maintenance. (AR 1344.) While the ALJ's representation is relatively accurate for that time period, it does not account for Plaintiff's daytime fatigue, which is corroborated by self and family reports, as discussed above, and his primary care physician (AR 1354).

By May 2006, when Plaintiff and his wife again completed function reports, his activity level had changed significantly. In an April 2006 report for his social security appeal, which was not referenced by the ALJ, Plaintiff stated he was entirely dependent on his wife, and he no longer vacuumed, mopped, cooked, or cleaned the pool. (AR 105.) In the May 20, 2006 report, Plaintiff indicated he napped in the afternoon, only prepared simple food two to three

times per week, had hired a yard person and a pool service because he was too exhausted to do significant work (AR 66, 68, 69), he rarely shopped, his wife did almost all of the driving, and that he needed someone to accompany him when he went out (AR 69, 70). His wife provided a similar report about his activities and limitations. (AR 74-79.)

With respect to other miscellaneous activities referenced by the ALJ, they do not present a complete picture of the record. Although the VA medical records indicate that on one occasion, March 31, 2006, Plaintiff worked in the yard for several hours; that was documented because Plaintiff called his doctor to report that, in response, he had an episode of sign symptomatic hypotension. (AR 1217.) Additionally, the ALJ's finding that Plaintiff's activities included travel is supported only by a singular report of one week-long trip to Texas in February 2007. (AR 1382.) With respect to walking and bicycling, these activities were prescribed for weight loss and back pain. (AR 534, 1404, 1421.) Petitioner's level of exercise varied over time: at his September 2005 discharge, he could walk over 100 yards; in May 2006, he reported ability to walk two to three blocks; in August 2007, he switched to riding a bike due to his back pain; in March 2007, his walking distance was approximately 400 meters. (AR 71, 411, 1374, 1425.)

When the record is assessed holistically and along a time-line, there is not substantial evidence to support the ALJ's finding that Plaintiff's activities of daily living are inconsistent with disability and undermine his credibility. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing two bases on which daily activities can be the foundation for adverse credibility findings, when they contradict the claimant's testimony or a substantial part of a claimant's day is occupied with activities transferable as work skills). "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (finding credible claimant's assertion of pain and physical limitations despite her ability to grocery shop with help, socialize with friends, play cards, walk an hour in the mall, watch television and read); *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("many home activities are not easily transferable to what may

be the more grueling environment of the workplace, where it might be impossible to periodically rest"). Additionally, Plaintiff's primary care doctor noted in September 2005, that Plaintiff could not do anything for more than one hour at a time (AR 1271); further, she informed Plaintiff and documented in the records that he was not capable of returning to work in December 2005, due to hypertension, PTSD, memory problems and hearing loss, and again in April 2006, due to fatigue, memory problems and depression/PTSD. (AR 1213-15, 1254-56.)

The ALJ erred by failing to articulate clear and convincing reasons to discount Plaintiff's credibility regarding his symptoms of back pain and PTSD, including memory and concentration problems, depression and fatigue. Further, the ALJ's findings regarding Plaintiff's activities of daily living were not supported by substantial evidence. On remand, the Commissioner shall review and address Plaintiff's symptoms individually, and support any credibility rejection with clear and convincing reasons.

**Remedy**

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2006) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). The ALJ failed to provide sufficient explanation for not giving weight to the VA Ratings Decision, for rejecting Dr. Petro's and Dr. Johnston's opinions, and for finding Plaintiff not wholly credible. Thus, the Commissioner needs to reconsider each of those issues, modify the decision as necessary, and provide specific reasons supported by the required evidence for the decision. To the extent the Commissioner alters his assessment of Plaintiff's mental impairments at step two, he will need to reconsider Plaintiff's combination of impairments in the remaining analysis. The Commissioner may need to obtain additional evidence regarding the resulting limitations. Thus, the appropriate remedy at this point in the proceedings appears to be a remand for further findings.

On remand, the Commissioner should, in light of today's opinion, (1) gather any additional evidence necessary to a final resolution of this case; (2) set forth findings regarding

the VA Ratings Decision, giving it great weight or providing persuasive, specific, valid reasons supported by the record to give it less weight; (3) set forth specific findings regarding the opinion of Dr. Petro based on all the record evidence and support any rejection with sufficient evidence and reasons; (4) give consideration to Dr. Johnston's opinion on Plaintiff's ability to return to work and support any rejection with sufficient evidence and reasons; (5) set forth specific findings regarding Plaintiff's symptoms and provide clear and convincing reasons for any rejection of Plaintiff's credibility; and (6) reconsider Plaintiff's residual functional capacity based on all his impairments, whether severe or not, 20 C.F.R. § 404.1545(a)(2).

## **RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge recommends the District Court, after its independent review, enter an order granting Plaintiff's motion for summary judgment (Dkt. 16-2) and remanding the matter.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within ten days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **CV-08-402-TUC-JMR**.

DATED this 26th day of June, 2009.

D. Thomas Ferraro
United States Magistrate Judge